[No. 7755.   Decided March 3, 1909.]

F. H. BALDIE, *Appellant*, v. TACOMA RAILWAY & POWER COMPANY, *Respondent*.[1]

STREET RAILWAYS—COLLISION WITH AUTOMOBILE—DRIVING ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. It is not contributory negligence, as a matter of law, for the driver of an automobile, who was run into from behind by a street car, to drive his machine on the street car tracks, without looking back, where it appears that he had a red rear light, the night was dark and foggy, and there was danger of striking people on the crossings, and one of the cross streets was torn out and could be crossed only over the street car tracks, and there was evidence that the street car was running at a dangerous rate of speed and sounding no alarm at the time of the collision.

SAME — STREETS — RIGHT OF WAY — NEGLIGENCE — QUESTION FOR JURY. In such a case, the street car does not have the right of way, as a matter of law, and it is for the jury to determine whether the motorman was guilty of negligence in not seeing the automobile in time to avoid an accident.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered October 26, 1908, upon defendant's motion for a nonsuit, after a trial before a jury, dismissing an action for damages to an automobile run into by a street car.   Reversed.

*H. M. Owens* and *Bates, Peer & Peterson*, for appellant.
*Grosscup & Morrow*, for respondent.

CHADWICK, J.—This action was brought by plaintiff to recover damages for injuries to an automobile, alleged to have been the result of the careless and negligent operation

[1]Reported in 100 Pac. 162.

of one of defendant's street cars in the city of Tacoma.    At
about the hour of midnight of November 7, 1907, the auto-
mobile, driven by a chauffeur, was run onto Tacoma avenue
from a side street, and was proceeding in a southerly direc-
tion at a speed of about ten or twelve miles an hour.    After
the automobile had been run a distance of three or four blocks
and was within about twenty feet of a street crossing, the car
crashed into the rear end of the machine, causing the damage
for which recovery is now sought.    A dense fog was hanging
over the city.    The automobile was equipped with two white
headlights, turned low, and a red rear light.    It was also
equipped with a Gabriel horn, which was blown at frequent
intervals.    The place of the accident was near the end of the
car line.    The automobile passed the car while it was standing
at the terminus and passengers were alighting.    At that time
the headlight on the car was showing to the north.    After
passing the car, the driver ran his automobile over and partly
onto the street car track, and as we have said, had proceeded
between three and four blocks in a southerly direction when
overtaken by the street car.

The witnesses, the chauffeur and a passenger, say that the
motorman did not ring the bell or give any warning what-
ever of the approach of the car; that if he did so they did
not hear it.    However, the passenger says he heard a rumb-
ling noise, looked out at the side, saw the white headlight of
the car, called to the chauffeur to jump, and at that moment
the crash came.    The chauffeur says he had taken the mid-
dle of the street, and was thus on the car track, because of
the fog and the danger to pedestrians who might undertake
to cross from a side street in front of the machine, and be-
cause he knew that one of the streets intersecting with Ta-
coma avenue was torn out and could be crossed only over the
car track.    Upon this state of facts, plaintiff rested his case;
whereupon defendant moved for a nonsuit. This was granted,
and plaintiff has appealed.

The sole ground upon which the learned trial judge based his ruling was that appellant was guilty of such contributory negligence as to preclude a recovery, in that he had voluntarily run the automobile on the track of the respondent, and had failed to look back from time to time; whereas he might and should have driven it over that part of the street lying between the car track and the curb, usually and more properly sought out by drivers of vehicles. In passing upon the question before it, the court said:

"It seems to me, under the authorities, that when one goes on a car track, follows it without paying any attention as to whether the car is coming or not, and never looking around or making any attempt to protect himself, it is contributory negligence under the law."

His decision rests upon the proposition that the mere fact that plaintiff's chauffeur was driving his automobile upon the street car track without looking back or anticipating the approach of a car was negligence *per se*. The street and the whole width thereof was open to vehicles, and it has been frequently held that the mere use of a car track by the driver of a vehicle is not negligence as a matter of law. *North Chicago Elec. R. Co. v. Peuser*, 190 Ill. 67, 60 N. E. 78; *Mertz v. Detroit Elec. R.*, 125 Mich. 11, 83 N. W. 1036; *Traver v. Spokane St. R. Co.*, 25 Wash. 225, 65 Pac. 284; 27 Am. & Eng. Ency. Law (2d ed.), 57.

It is true that it puts upon the driver of the vehicle a greater degree of care, but it does not put upon him the burden of keeping a lookout to the rear to the exclusion of his duty to look ahead. The duty to look ahead is paramount. The red rear light is in itself a warning upon which the driver has a right to rely for protection from oncoming cars or vehicles, which, although they have a paramount right of way, must assert it in some accepted manner, as by ringing a bell or sounding a whistle, so that the driver may clear the way for the one to whom it more properly belongs. Whether the chauffeur was guilty of contributory negligence

in driving his automobile along the track, under the circumstances, was a question of fact. The driver owed a duty to pedestrians as well as to the street car company, and the jury may have found that, considering the fog and darkness, it was the part of prudence for him to take the center of the street rather than the open roadway at the side. Another fact which it would seem the lower court overlooked is that the witness Sullivan testified that, after he had jumped out of the automobile and the car had run from eighty-five to one hundred feet, and after the headlight of the car had been demolished, he could see and distinguish the men in charge of the car. If the jury found this to be true, it would be evidence tending to show that the motorman, considering the character of the night and the fact that he had reversed his car and overtaken the automobile, itself running ten or twelve miles an hour, within a distance of four blocks, was running at a dangerous rate of speed, and especially so if it should also be found that the motorman was not sounding any bell or alarm.

It was the opinion of the lower court that this case falls within the rule of *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488. In that case it appeared that Skinner was not only acquainted with the movement of the cars at and about the place of the accident, and had reason to anticipate the danger, but as is said in the opinion, he "carelessly walked upon the track, within ten feet of an approaching car with all its lights burning. He stepped directly into the rays of the headlight of the car. There was nothing to obstruct his view." In that case, however, this court took occasion to define the duty of a motorman, and in so far as it did, it applies to the case at bar:

"If the motorman sees a clear track and has no occasion to stop and no reason to anticipate danger to another, it would not be negligence to maintain the usual rate of speed, even over a crossing. But if he sees, or ought to see, persons or vehicles thereon, not able to get out of his way readily, it

would certainly be negligence not to have such control of his car as to be able to stop before reaching such crossing."

In speaking of the universal knowledge and customs which in justice have the force of law and which make it the duty of the party who can more easily and readily adjust himself to the exigencies of the case, to do so, Judge Dunbar says, in the case of *Helber v. Spokane Street R. Co.*, 22 Wash. 319, 61 Pac. 40:

".  .  .  the motorman has· the right to presume that such duty will be performed. Of course, if he discovers, or ought, as a prudent person, to discover, that it will not be performed, his duty is to stop in any event; otherwise, he will subject himself and his company to the charge of wilful negligence."

Whether the motorman had no reason to anticipate danger cannot be found, as a matter of law, from the mere fact that the car had a right of way over the street car track. Such a rule would exempt street car companies entirely. If, considering the lights on the car, the lights on the automobile, the foggy night, and all other circumstances attending the accident, he should have seen the automobile, was for the jury. If the jury found that he did, or should have seen the automobile in time to avoid the accident, and did not do so, he would be negligent. If it found that he did not and could not, in the exercise of reasonable care and prudence, see the automobile in time to prevent the accident, he would not be guilty of negligence.

The case of *Burian v. Seattle Elec. Co.*, 26 Wash. 606, 67 Pac. 214, declares the rule, that a failure to look and listen does not constitute negligence as a matter of law, but that the jury might find from all the facts disclosed on the trial whether under his peculiar surroundings it was the duty of the pedestrian to look or listen. In considering the duty of a street railway company to the public no distinction is made between pedestrians and vehicles. 27 Am. & Eng. Ency. Law

(2d ed.), 58; Nellis, Street Railways, p. 343. The law is best stated in *Mertz v. Detroit Elec. R. Co.*, *supra*, where the following instruction was requested:

"The cars of the defendant company have the right of way upon its tracks, and defendant's motorman had the right to assume that any horse and vehicle would not be upon the right of way, and had the right to operate his car under the assumption that the right of way would be clear, and, to propel the car at the rate allowed by law of 15 miles an hour."

The court said:

"This request does not correctly state the law. The defendant company does not have the exclusive right of way over the part of the street in which its track is laid. The drivers of ordinary vehicles are in no sense trespassers upon the track, and one in charge of a street car is bound to know this. The duties of a driver of a wagon on the track and a motorman are, in some sense, reciprocal. The duty of the latter, at the very least, is to keep a lookout ahead; and, when it becomes apparent that the track is occupied by a vehicle which cannot be gotten off in time to avert a collision, it is his duty to bring the car to a stop."

This case is reversed and remanded for further proceedings in the court below.

RUDKIN, C. J., DUNBAR, FULLERTON, GOSE, CROW, and MOUNT, JJ., concur.