[No. 10690.   Department Two.   January 25, 1913.]

EDWARD O'BRIEN, *Appellant*, v. WASHINGTON WATER POWER
COMPANY, *Respondent*.[1]

STREET RAILROADS—INJURY TO PERSONS ON TRACK—NEGLIGENCE—
EXCESSIVE SPEED—QUESTION FOR JURY. In an action by the driver
of a team, struck by a street car, the negligence of the defendant
is a question for the jury, where there was evidence that the car
was exceeding the speed limit when the motorman first discovered
the team on the track 300 feet away, and that the speed was not
reduced until within two car lengths of the wagon; exceeding the
lawful speed limit being negligence *per se*.

SAME—CONTRIBUTORY NEGLIGENCE—ORDINANCES—LAW OF ROAD.
An ordinance requiring all vehicles to keep as near to the right-
hand curb as possible was not intended to prohibit the driver of a
wagon from driving upon a street car track in the center of the
street, and it is not contributory negligence *per se* to do so.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Where
plaintiff testified that he was unable to drive off a street car track
in time to avoid a collision, owing to a passing automobile and
the skidding of his wheels on the rails, and there was evidence that
he was intoxicated and inattentive, his contributory negligence was
a question for the jury.

SAME—PROXIMATE CAUSE—QUESTION FOR JURY. Whether the neg-
ligence of the defendant or the contributory negligence of the plain-
tiff was the proximate cause of the accident, is a question for the
jury, where a street car collided with a wagon, on the track, through
the contributory negligence of the driver in failing to see the ap-
proaching car in time to get off the track, and the motorman saw
the plaintiff's wagon on the track 300 feet away, and slowed down
and might have applied the emergency brake in time to have
avoided the collision.

Appeal from a judgment of the superior court for Spo-
kane county, Yakey, J., entered March 9, 1912, upon the
verdict of a jury rendered in favor of the defendant by direc-
tion of the court, in an action for personal injuries sustained
through the collision of a wagon and a street car.   Reversed.

*Morrill, Chester & Skuse*, for appellant.

*Post, Avery & Higgins*, for respondent.

[1]Reported in 129 Pac. 391.

ELLIS, J.—This is an action to recover damages for personal injuries sustained by the plaintiff as the result of a collision of his wagon and one of the defendant's street cars on Sprague avenue, between Altamont and Cook streets, in the city of Spokane. The pleadings presented, and the evidence was directed to, the usual issues of negligence, contributory negligence, and proximate cause.

The evidence adduced was, in substance, as follows: The plaintiff resided about five miles southeast of Spokane. He was well acquainted with Sprague avenue, generally driving upon it in going to and from the city. At the place of the accident, a suburban portion of the city, the defendant had a single street car track along the avenue near the middle. The street from there east, and for several blocks to the west, was unpaved. There was a space of from twenty-two to twenty-seven feet between the south rail of this track and the south curb of the street. The track extended east of the place of the accident four or five blocks in a straight line. The accident occurred between seven and eight o'clock in the evening of September 30, 1911. The street was dark but for a light at the corner of Cook street and Sprague avenue. The car was lighted within and had an ordinary head light burning. The plaintiff had started for his home with a team pulling a heavy farm wagon, but without load. He had driven along the south side of the avenue to a point about midway between the intersection therewith of Altamont street on the west and Cook street on the east.

He testified, that he heard the horn of an automobile behind him and turned to his left to allow it to pass; that in so doing, the left-hand horse and the two left-hand wheels of the wagon passed upon the street car track; that while in this position, he looked down the track toward the east, and saw a street car about two blocks away coming rapidly in his direction; that he at once turned his horses to the right and tried to drive off the track, but that on account of the passing automobile and the skidding of the wheels upon the

rail of the track, which was three or four inches higher than the roadbed, he was unable to clear the track with the left hind wheel before the car struck it, threw him to the ground, and inflicted the injuries complained of. He estimated that he had driven upon the track for a distance of about fifty or sixty feet before the collision.

A witness who resided at the corner of Cook street and Sprague avenue testified, that he and another man were standing on the front porch of his house; that he first heard a signal from the car when it was about 150 feet east of Cook street and about 300 feet from the plaintiff; that he at once looked at the wagon and team, and watched it until the car struck the wagon; that as nearly as he could recollect, the horses' heads were pointed towards the southeast; that in his judgment the car was running at the rate of thirty miles an hour when he first saw it, and did not seem to slacken its speed until probably within two car lengths of the wagon, and was going between fifteen and twenty miles an hour when it hit the wagon. The other man who was on the porch did not see the collision, but stated that the car was going faster than cars ordinarily travel in that part of the city. An ordinance of the city in evidence limits the speed of street cars to ten miles an hour inside the fire limits and fifteen miles an hour in other parts of the city.

The motorman testified that he detected something on the track when he was one-third or one-half way in the block east of Cook street; that he first discovered that it was a wagon and team when about a car's length or fifty to fifty-five feet away; that when he first saw the object he had on full power, and threw off the power, put on the brakes, and blew the whistle; that at that time he was running twelve or fourteen miles an hour; that he had slowed down to a speed of about seven miles an hour when he discovered what it was upon the track, and that he then applied the emergency brake, and that the car went almost a car's length beyond the wagon before it stopped; that after the fender of the

car had hit the rear wheel of the wagon and shoved it from the track, he released the emergency brake to ease the stop and prevent injury to his passengers, which caused the car to run further than it otherwise would. Two witnesses, who were passengers on the car, testified that it was not running faster than the ordinary speed, and that just before the accident it came almost to a dead stop. A farmer, who at the time was driving along Sprague avenue in an easterly direction, between Altamont and Cook streets, testified that he heard several short blasts of a car whistle, indicating danger, and looking for the cause, saw the plaintiff in his wagon west of the witness, about 75 or 80 feet, going right up the track toward the car; that the car at the time was about half way in the block east of Cook street; that plaintiff was sitting with his head bent over on his breast, and made no effort to pull the horses from the track; that just an instant before the car struck the wagon, the horses swung off to the side of the track; and that when the car came to a standstill, its rear was beside the wagon. All of the witnesses who testified as to the accident, and others who were in the vicinity at the time, were questioned as to the presence of an automobile. None of them, save the plaintiff, saw any automobile in that vicinity.

Without specifying the several witnesses who testified upon the subject, it will suffice to say that there was ample evidence from which the jury might have found that the plaintiff was, at least to some extent, intoxicated at the time of the accident; one witness testifying that a short time before starting home the plaintiff was "pretty drunk." The plaintiff denied this and said that he had only had two glasses of beer.

The defendant introduced an ordinance of the city containing the following provisions:

"Section 1. In occupying or traveling upon the streets, avenues, highways and bridges of the city, all vehicles shall keep to the right as near the right hand curb as possible.

"Section 2.  Vehicles meeting shall pass each other to the right.

"Section 3.  Vehicles overtaking others shall in passing keep to the left.

"Section 18.  Vehicles moving slowly shall keep as close as possible to the curb line on the right so as to allow faster moving vehicles free passage to the left."

An expert street car man testified in behalf of the defendant that a car of the kind here in question, by throwing off the power and applying the emergency brake, could be stopped, when running fifteen miles an hour, in seventy to eighty feet; when running fourteen miles an hour, in fifty to seventy feet; and when running seven miles an hour, in thirty-five feet.  He further testified that, if the car was running only seven miles an hour when the motorman applied the emergency brake at a distance of fifty feet from the wagon, he would not have hit it at all.

At the close of the evidence, the defendant moved the court to instruct the jury to find a verdict for the defendant, upon the ground that the evidence conclusively established the contributory negligence of the plaintiff as the proximate cause of the accident.  The motion was granted, and judgment entered accordingly.  The plaintiff prosecutes this appeal.

In considering the respondent's motion for a directed verdict, we must accept as true all competent evidence adduced supporting the appellant's complaint.  *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51.  We must, therefore, proceed upon the assumption that the evidence was sufficient to show that the motorman was running the car at an excessive rate of speed when he first discovered something upon the track 300 feet ahead of him; that even then he did not reduce its speed till the car was within two car lengths of the wagon, and that the car was going at the rate of fifteen or twenty miles an hour when it struck the wagon.  The question of the respondent's negligence was clearly one for

the jury. From the evidence, the jury might have found that the car was exceeding the lawful speed limit, which would be negligence *per se*. *Engelker v. Seattle Elec. Co.*, 50 Wash. 196, 96 Pac. 1039; *Wilson v. Puget Sound Elec. R.*, 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044.

The respondent contended, and the court held, that the appellant was guilty of contributory negligence, as a matter of law, upon the same principle; namely, that he was violating the city ordinance in that he was not keeping to the right, near the right hand curb, to allow "faster moving vehicles," such as automobiles, "free passage to the left." The appellant rejoined by a citation of the state law (Rem. & Bal. Code, § 5569), which provides that automobiles shall "turn to the right in passing vehicles, teams and persons moving or headed in the same direction," as justifying his turning to the left. We find it unnecessary to decide whether the statute would supersede the provisions of the ordinance so far as in conflict therewith, since we think that neither the statute nor that part of the ordinance relied upon by the respondent has any relation to the use of the street as between street cars and other vehicles. Whatever may be said of either statute or ordinance as determining negligence as between the driver of an automobile and the driver of a wagon, carriage, or dray, or of another automobile, the provisions cited were never intended to prohibit a vehicle from being driven upon a street car track. It was not negligence *per se* to drive upon the track. *Spurrier v. Front St. Cable R. Co.*, 3 Wash. 659, 29 Pac. 346; *Traver v. Spokane St. R. Co.*, 25 Wash. 225, 65 Pac. 284; *Burian v. Seattle Elec. Co.*, 26 Wash. 606, 67 Pac. 214; *Baldie v. Tacoma R. & Power Co.*, 52 Wash. 75, 100 Pac. 162; *Keefe v. Seattle Elec. Co.*, 55 Wash. 448, 104 Pac. 774; *Pantages v. Seattle Elec. Co.*, 55 Wash. 453, 104 Pac. 629. As said in the *Keefe* case, "The facts declare the law in such cases." The question was for the jury upon the facts.

Whether the appellant was prevented from getting off the

track after seeing the car, because of a passing automobile and because of the skidding of the wheels of his wagon upon the elevated rail, or whether the failure was due to his own intoxication, were also questions for the jury. We will say in passing, however, that the fact that the appellant was intoxicated, if it be a fact, was no legal excuse for his failure to clear the track. *Conrad v. Graham & Co.*, 54 Wash. 641, 103 Pac. 1122, 132 Am. St. 1137; *Vizacchero v. Rhode Island Co.*, 26 R. I. 392, 59 Atl. 105, 69 L. R. A. 188.

But even assuming that the appellant was guilty of negligence, as a matter of law, there still remains the question as to whether his negligence or that of the respondent was the proximate or efficient cause of the accident. The motorman himself testified that, when about 300 feet distant, he discerned some object upon the track, which he discovered to be a wagon and team when about fifty feet away, when he applied the emergency brake, but too late to avoid the collision. When he first saw the object, he recognized it as a possible danger, since he claims that he then threw off the power, blew the whistle, and slowed down to seven miles an hour. The respondent's evidence shows that a car, such as the one in question, could be stopped by applying the emergency brake in a distance of thirty-five feet, and that if, as the motorman claims, the car was going at the rate of seven miles an hour when he applied the emergency brake, it would never have hit the wagon. It is hardly a sufficient excuse to say that he had the right to assume that the wagon would leave the track, since he testified that he did not know the object was a wagon till within fifty feet of it. If he did not know it was a wagon, he could hardly assume that it would leave the track. The danger, when he had approached to within fifty feet, was imminent, and it was for the jury to say whether, under the evidence, he should not have then had his car under such control as to be able to stop it before hitting the wagon. Whether, but for an excessive rate of speed, the motorman saw the appellant's danger in time to avoid

the collision, was a question of fact. If he did, it was his duty to stop, regardless of any negligence of the appellant; and his failure to do so, if because of excessive speed, was the proximate and efficient cause of the injury. These were questions for the jury. *Morris v. Seattle, Renton & Southern R. Co.*, 66 Wash. 691, 120 Pac. 534; *Nicol v. Oregon-Washington R. & Nav. Co., ante* p. 409, 128 Pac. 628.

The decisions cited by the respondent are clearly distinguishable from this case upon the facts. In *Pantages v. Seattle Elec. Co., supra*, it was merely held that the jury should have been instructed that the motorman had the right to assume, until the danger became imminent, that the automobile would leave the track in time to avoid a collision. As we have seen, there was no ground for this assumption under the motorman's evidence here. In *Criss v. Seattle Elec. Co.*, 38 Wash. 320, 80 Pac. 525, the evidence showed that the motorman did not see the plaintiff until he came upon the track thirty or forty feet ahead of the car. The danger when first discovered was imminent, and the motorman had no chance to avoid it. Here the motorman saw the object on the track when 300 feet distant. In *Fluhart v. Seattle Elec. Co., supra*, the plaintiff, a pedestrian unimpeded in any manner, was apparently never on the track, but carelessly walked so close to it as to be struck by the car.

Under the evidence before us, the case should have been submitted to the jury upon the questions of the respondent's negligence, the appellant's negligence, and proximate cause.

The judgment is reversed, and the cause is remanded for a new trial.

MOUNT, MORRIS, FULLERTON, and MAIN, JJ., concur.