[No. 22948. *En Banc.* October 22, 1931.]

H. C. SHANAHAN *et al., Respondents,* v. INTERNATIONAL STAGE COMPANY *et al., Appellants.*[1]

[1]Reported in 3 P. (2d) 1092.

610

*Pearson & Potts,* for appellant Lee and Eastes.

*Guy E. Kelly, Thomas MacMahon,* and *Whittemore & Truscott,* for appellant International Stage Company.

*John F. Dore,* for respondents.

PARKER, J.—The plaintiffs, Shanahan and wife, seek recovery of damages for personal injuries suffered by Mrs. Shanahan, claimed as resulting from the concurring negligent driving of a motor stage belonging to the defendant stage company and a motor truck belonging to the defendant Lee and Eastes. A trial in the superior court for King county, sitting with a jury, resulted in a verdict awarding to plaintiffs recovery against both defendants in the sum of thirty thousand dollars. Thereupon defendants each moved for judgment in their favor notwithstanding the verdict, and, in the alternative, for a new trial. The former was by the court denied. The latter was also by the court denied, upon the plaintiffs' electing to accept an award of twenty thousand dollars. Final judgment was by the court rendered accordingly, from which defendants have each appealed to this court.

At the time in question, the stage company was engaged as a common carrier of passengers by motor stages between Portland, Oregon, and Puget Sound cities in this state, and Lee and Eastes was engaged as a common carrier of freight by motor trucks, with trailers, along the Pacific highway past the scene of the accident in question. Mr. and Mrs. Shanahan were passengers on one of the stages belonging to the stage company, en route north from Portland to Seattle, sitting together on the right-hand side of the stage. Mr. Shanahan sat next to the aisle, and Mrs. Shanahan sat next to the window.

At about one'clock in the morning, the stage had proceeded to a point on the Pacific highway some six miles north of Vancouver. At that time and place, a large freight truck, with a large trailer, belonging to Lee and Eastes, was being driven south along the highway. At that place, the highway curves towards the east. The stage and the truck, as they approached each other on the curve, were each being driven, at least partially, on the half of the pavement to its left. The visibility ahead was considerably impaired by fog as well as by the curve. The speed of the truck was twenty to twenty-five miles per hour. The speed of the stage was thirty to fifty miles per hour.

In attempting to pass each other, evidently each driver turned suddenly to his right, but too late to pass without contact. The truck and the stage passed each other without contact, but the rear of the body of the trailer came in contact with the body of the stage, striking the rear stanchion of the front window of the stage, and also striking and breaking three other windows and their stanchions on that side of the body of the stage, leaving the rear window and its stanchion unbroken, but marring its forward stanchion, thus evidencing not only a raking of the side of the body

of the stage, but also a contact in the nature of a glancing blow between the body of the stage and the trailer.

Mr. Shanahan was thrown to the floor in the aisle of the stage. Mrs. Shanahan was sleeping at the time, and was thrown and fell between the seat in which she was sitting or reclining and the back of the seat in front of her. She was very severely injured in her spine, receiving a nervous shock of such seriousness as to probably render her totally disabled for the remainder of her life.

The jury, we think, were warranted by the evidence in regarding these outstanding facts as proven, and evidently did so regard them.

Contention is made in behalf of appellants that the evidence was insufficient to warrant the awarding of any recovery by respondents. We think our summary of the facts, as above noticed, is a sufficient answer to this contention.

It is, however, seriously contended that, in any event, the evidence was insufficient to support an award to respondents in the sum of twenty thousand dollars. Mrs. Shanahan, at the time she was injured, was twenty-one years old. She was then in perfect health, and earning $125 per month, having acquired considerable executive ability even at that early age. At the time of the trial, she had not been able to walk since the time she was injured, which occurred some ten months earlier than the date of the trial. She was in bed as a result of her injuries nearly the whole of that period, and suffered intensely practically the whole of that period. There is medical testimony, which the jury had the right to believe, to the effect that it was highly probable that Mrs. Shanahan's injuries were of a permanent disability character, with little prospect of any substantial improvement in the future. We are

of the opinion that the judgment is sustained by the evidence, both as to respondents' right of recovery generally and as to their right of recovery in the sum of twenty thousand dollars.

It is contended in behalf of appellants that they are entitled to a new trial because of newly discovered evidence touching the physical condition of Mrs. Shanahan subsequent to the time she was injured. This alleged newly discovered evidence is presented by affidavits of persons who claimed to have seen her, on several occasions, walking without any apparent disability after the occurrence of her injuries. These affidavits were denied by counter-affidavits, particularly as to the identity of the woman. The showing made by the affidavits and counter-affidavits amply warranted the trial judge in believing, as he evidently did, that the woman affiants claimed to have seen walking without apparent disability was not Mrs. Shanahan. We are of the opinion that there is no such showing of newly discovered evidence as to warrant our interference with the action of the trial court in denying appellants' motion for a new trial in so far as newly discovered evidence is concerned.

It is contended in behalf of appellants that the trial court erred to their prejudice in refusing their counsels' request, during the trial, to then have X-ray pictures of Mrs. Shanahan taken. This request was denied, apparently because not timely made. The request was evidently made with a view of producing further evidence as to whether or not Mrs. Shanahan's spine was injured as claimed in her behalf. In the complaint, served and filed several months before the trial, it was alleged "that the muscles and ligaments of her abdomen have been torn; and that the sixth dorsal vertebra has been dislocated and torn." So it seems plain that appellants were, long before the trial,

advised of claims on the part of respondents concerning which X-ray pictures of Mrs. Shanahan would be, upon the trial, of evidentiary value.

Mrs. Shanahan was necessarily brought from her home into the courtroom, upon the trial, on a stretcher, being then unable to walk, and evidently during the trial was in great distress, both mentally and physically. To have removed her to a hospital, where proper appliances would be available for X-ray photographing, would have added to her discomfort. All these considerations were visible to the trial judge. It seems clear to us that he did not err in refusing to require Mrs. Shanahan to submit to the taking of X-ray pictures of her at that late day. Apparently, that was the first request made for such pictures in behalf of appellants.

It is contended in behalf of appellant stage company that the trial judge erred to its prejudice in admitting in evidence photographs of the location of the accident, showing one of the trucks of appellant Lee and Eastes standing near the scene of the accident on the pavement. The argument seems to be that these pictures give an erroneous impression of the situation at the time of the accident, prejudicial to the stage company. It is true that these photographs show the truck to be on its right side of the pavement. They are of the same evidentiary character as are the photographs of the highway and the pavement introduced in behalf of the stage company. They are not materially different, save they show the truck on the pavement at the curve. It was not claimed that the truck was so shown to be in the exact position as at the instant of the accident. They were but illustrative of the general surroundings of the scene of the accident, substantially the same as were the photographs introduced in behalf of the stage company. We are unable

to see any prejudicial error in the receiving of these photographs in evidence in connection with the testimony that accompanied them.

 It is contended in behalf of appellants that the trial judge erred to their prejudice in instructing the jury as follows:

"You are instructed that the driver of a vehicle upon the public highway in foggy weather must maintain a greater and more careful lookout to avoid collision with other vehicles that might be upon said highway than he would be required to exercise under circumstances where the visibility was good."

There seems to be some room for arguing that this is a charge "with respect to matters of fact" such as is prohibited by Art. IV, § 16, of our state constitution. However, it seems to us to have been clearly without prejudice as applied to this case.

 It is contended in behalf of appellant Lee and Eastes that the trial court erred to their prejudice in giving to the jury the following instruction:

"You are instructed that the law of the state of Washington provides that whenever any person driving any vehicles shall meet on any public highway in this state, the persons so meeting shall seasonably turn their vehicles to the right of the center of the road to permit each vehicle to pass without interfering with or interrupting the other.

"The driver of the defendant stage company's stage had the right to assume that any vehicle approaching him would obey the traffic laws of the state of Washington and had the right to assume that any traffic approaching him would turn seasonably to the right of the center of the highway and the driver of the said stage would not be negligent in proceeding upon that assumption until he knew or in the exercise of reasonable care should have known to the contrary."

The argument is, in substance, that, by the concluding paragraph of the instruction, the general rule

stated in the first paragraph is made applicable to the stage company and omits making the rule applicable to Lee and Eastes. We think it is true that the rule would be applicable to them as well as to the stage company, but there is nothing in this record showing that Lee and Eastes made any request for any such instruction. It is asserted in the brief for respondents, and not denied, that this instruction was requested by the stage company. The record before us does not show otherwise. This was a matter of non-direction rather than erroneous direction. We think it was not of such serious consequence as to entitle Lee and Eastes to a new trial.

Some other claims of error are made by counsel for appellants. These we have not overlooked. We think they are disposed of by what we have already said, in so far as they merit discussion. We conclude that appellants have had a fair trial, free from prejudicial error.

The judgment is affirmed.

TOLMAN, C. J., MAIN, BEALS, MILLARD, BEELER, and HERMAN, JJ., concur.

HOLCOMB, J. (dissenting)—The evidence as to any negligence on the part of the stage company was probably sufficient to carry the case to the jury under a proper submission of the theory of its defense. The situation as shown by the record as to which vehicle was the proximate cause of the collision renders a requested instruction highly important to the stage company.

Requested instruction No. 10 reads:

"Certain evidence has been introduced to the effect that the bus driver was talking to a passenger. You are instructed that no law prohibits the driver of any motor vehicle from conversing with other occupants of

the vehicle, and if you believe, from the evidence, that the bus driver was paying attention to the road at the time of the accident, and was on his own right-hand side of the paved portion of the highway, then the question of whether or not the driver was talking to a passenger is immaterial.''

Whether any negligence of the stage driver contributed to cause the collision, or whether it was caused solely by the negligence of the truck driver being on the wrong side of the road, was a vital issue in the case. Although the requested instruction is somewhat improper in form, in saying that ''no law prohibits the driver of any motor vehicle from conversing with other occupants of the vehicle,'' thus stating the law negatively instead of affirmatively, it was not a serious defect. That clause could have been stricken by the trial court, the remainder given, and one theory of that party's defense properly submitted to the jury.

Respondents assert that the first part of the instruction was a comment on the testimony. I see no such fault in it. It is no more a comment on the testimony than is the direction of the attention of a jury to testimony as to an alibi; or that here given respecting a driver's duty in foggy weather. It is not improper to direct the attention of a jury to certain evidence without in any way commenting upon its weight or credibility.

In *Van Cello v. Clark,* 157 Wash. 321, 289 Pac. 19, the first part of a requested instruction was given, but it was held that the gist of respondent's case was the fact that, unless appellant was driving his car, in part at least, upon the left-hand side of the road, respondent could not recover. That was a vital issue in that case, and we held that, although the court clearly instructed the jury in general language, the court erred in failing to give the concrete instruction requested by appellant.

For these reasons, and others disclosed by the record, convincing me that both parties should be granted a new trial, I consider that a new trial should be granted, at least as to appellant stage company.

I therefore dissent.

MITCHELL, J., concurs with HOLCOMB, J.